# UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| In re,<br><br>Bradley Christopher Hamrick,<br><br>Debtor(s). | C/A No. 20-01791-JW<br><br>Adv. Pro. No. 20-80054-JW<br><br>Chapter 13 |
| Bradley Christopher Hamrick,<br><br>Plaintiff(s),<br><br>v.<br><br>Memorie Beth Cole a/k/a<br>Memorie Beth Hamrick,<br><br>Defendant(s). | **ORDER** |

This matter comes before the Court upon the Complaint filed by Bradley Christopher Hamrick ("Debtor") against Memorie Beth Cole a/k/a Memorie Beth Hamrick ("Defendant") on July 24, 2020. The Complaint alleges eight causes of action seeking declaratory judgment and eight causes of action for willful violation of the automatic stay under 11 U.S.C. § 362(k). Defendant filed an Answer, and a trial was held. This Court has jurisdiction pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157. This matter is a "core" proceeding under 28 U.S.C. § 157(b)(2). After carefully considering the evidence and weighing the credibility of the witnesses, the Court makes the following findings of fact and conclusions of law pursuant to Fed. R. Civ. P. 52, which is made applicable in bankruptcy proceedings pursuant to Fed. R. Bankr. P. 7052.[1]

---

[1]    To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such, and vice versa.

## FINDINGS OF FACT

### *Background*

1.      Debtor and Defendant were married on August 24, 2002 and have two minor children together.  During their marriage, Debtor and Defendant lived in numerous places due to Debtor's service in the United States Army, but for the majority of their marriage they lived in North Carolina.

2.      In February of 2013, upon Debtor's return from a tour of duty in Afghanistan, Defendant notified Debtor that she wanted to end their marriage and the parties separated.

3.      During the first few months of 2014, the parties began negotiating the terms of a Separation Agreement and Property Settlement ("Settlement Agreement").  The Settlement Agreement was drafted by Debtor's attorney, but both Debtor and Defendant participated in the negotiation of the terms of the Settlement Agreement and exchanged several drafts before agreeing to the final version, dated March 27, 2014. Defendant elected not to be represented by counsel in connection with the negotiation and drafting of the Settlement Agreement or pursuing a divorce from Debtor.  Defendant signed the Settlement Agreement on April 1, 2014 before a Notary Public in Florida, and Debtor signed the Settlement Agreement on April 12, 2014 before a Notary Public in Tennessee.

4.      The Settlement Agreement purports to set forth the parties' complete agreement regarding child support, spousal support and alimony, property division and other marital issues. It provides that "jurisdiction and interpretation of this Agreement shall be in accordance with North Carolina law." It does not include a provision providing for incorporation of the Settlement Agreement into the divorce judgment.  Two provisions of the Settlement Agreement remain at issue in this proceeding:

a.  Part III, Section 7, RETIREMENT, PENSION AND 401(k) ACCOUNTS

Both parties understand and agree that each may have accumulated during the course of the marriage certain retirement, pension, 401(k) or similar accounts. The parties understand and agree that each party shall be the sole and separate owner of all such accounts in that party's name. Each party agrees to sign any documents or other instruments which might be necessary to release their interest in those said accounts in the other's name.  However, it is understood and agreed that the Wife will receive twenty percent (20%) of the amount of retirement received by the Husband from the Army as determined from his rank of Captain.  Wife will not be entitled to this retirement if she is married at the time she becomes eligible to draw from this retirement.

b.  Part III, Section 12, MISCELLANEOUS PROVISIONS:

It is understood and agreed that the Husband shall sign whatever documents, or take all steps that might be necessary, in order to allow the Wife to continue to receive benefits under the Montgomery GI Bill for so long as she might be eligible.

5.      Between March 27, 2014 and June 10, 2014, Debtor did not execute any documents for the purpose of transferring military educational benefits to Defendant.

6.      On June 10, 2014, Debtor and Defendant were divorced by a Judgment of Absolute Divorce in the State of North Carolina.  Defendant failed to make an appearance in the divorce action.  The Judgment of Absolute Divorce does not incorporate or reference the Settlement Agreement and no other court has entered any order incorporating the Settlement Agreement into an order.

7.      Following their divorce, both Debtor and Defendant remarried.  Debtor continues to be on active duty in the United States Army and is not presently eligible for retirement. Defendant testified that her current marriage to Mr. Cole is troubled; however, as of the date of the trial of this matter she remains married.

8.      In 2016, Debtor transferred his 36 hours of military educational benefits to his two children.

9.      On March 18, 2020, Defendant filed a lawsuit in the Circuit Court in Okaloosa County, Florida ("Florida Domestic Court") seeking an award of child support, reimbursement of medical/dental expenses, provision of medical/dental insurance, life insurance to secure child support, attorney's fees, establishment of a parenting plan to determine custody and time sharing of children, amendment of a trust established on behalf of their daughter, rescission of the marital settlement agreement, division of marital property, including Debtor's military retirement, establishment of alimony/spousal support based upon failure to transfer military educational benefits, unjust enrichment, constructive fraud by breach of fiduciary duty, and three separate claims for conversion (the "Family Court Action").[2]  On that same date, Defendant filed a Petition to Domesticate Foreign Order in the Florida Domestic Court seeking domestication of the North Carolina Judgment of Divorce.

10.     On April 14, 2020, Debtor, while a resident of South Carolina, filed a voluntary petition for relief under Chapter 13 of the Bankruptcy Code in this Court.  That same day, the Bankruptcy Noticing Center served Defendant with the Notice of the Chapter 13 Bankruptcy Case by U.S. Mail sent to her residence at 108 Quince Avenue, Niceville, Florida 32578.[3]  The Florida Domestic Court was also served with Notice of the Chapter 13 Bankruptcy by the Bankruptcy Noticing Center.

11.     On April 20, 2020, the Florida Domestic Court received a Notice of Opportunity to Object and Confirmation Hearing filed in the Bankruptcy Court for the District of South Carolina

---

[2]      With the consent of the parties, the entire record of the Florida Domestic Court Action was admitted into evidence in this proceeding.

[3]      In its Second Order on Motion for Relief entered on October 7, 2020 in Debtor's bankruptcy case, the Court previously determined that Defendant had proper notice of the automatic stay by service of the Notice of the Bankruptcy Case.

and filed a copy of the Notice on the Florida Domestic Court docket for the Family Court Action. The Notice provided that Debtor filed a chapter 13 plan on April 14, 2020.  After receipt of the Notice, the Okaloosa County Clerk of Court closed the file for the Family Court Action.

12.     On April 28, 2020, Defendant filed a Motion to Strike in the Florida Domestic Court, seeking to reopen the Family Court Action and strike the Notice of Opportunity to Object and Confirmation Hearing as being "immaterial and impertinent" ("Motion to Strike"). The Motion to Strike also seeks attorney's fees and costs as affirmative relief against Debtor.  As a result of that filing, the Okaloosa County Clerk of Court reopened the Family Court Action.

13.     On May 6, 2020, Debtor's bankruptcy counsel sent a letter to Glenn Swiatek, Defendant's Florida counsel in the Family Court Action, advising him that he believed that Defendant's Motion to Strike was a violation of Debtor's automatic stay protection provided under 11 U.S.C. § 362 and continued prosecution of this motion "will expose yourself and your client to a willful violation of the automatic stay which will provide my client with recovery of any damages and attorney's fees in bankruptcy court, but also punitive damages resulting from your willful violation."

14.     On May 7, 2020, Defendant filed a proof of claim, asserting a priority claim for a domestic support objection under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B), based upon the attached Complaint in the Family Court Action filed in the Florida Domestic Court, in an amount to be determined by the Florida Domestic Court.

15.     On May 8, 2020, Defendant filed a Child Support Guidelines Scoresheet in the Family Court Action.

16.     On May 9, 2020, Defendant filed a Motion to Institute Standing Pretrial Order, Amended Financial Affidavit, Amended Child Support Guidelines Scoresheet, and Motion to Order Child Support Pendente Lite in the Family Court Action.

17.     On May 11, 2020, in response to Defendant's pending pleadings, Debtor filed a Motion to Dismiss Defendant's Petition to Domesticate Foreign Order, Motion to Dismiss Count Three of the Complaint for Failure to State a Cause of Action Upon Which Relief Can be Granted, and Motion to Dismiss for Lack of Subject Matter Jurisdiction in the Florida Domestic Court.

18.     On May 14, 2020, Defendant filed a Notice of Withdrawal of Motions, withdrawing her Motion for Child Support Pendente Lite, Motion to Institute Standing Pretrial Order and Motion to Strike in the Florida Domestic Court.

19.     On May 21, 2020, Debtor's counsel in the Family Court Action, Donald Whitmyer, sent an email to Amanda Bailey, Judicial Assistant to Circuit Judge Mary Polson of the Florida Domestic Court, requesting that she schedule a one-hour hearing on Debtor's three previously filed Motions to Dismiss.  Mr. Swiatek was copied on the email and responded to Ms. Bailey and Debtor's counsel that he had received a letter from Debtor's bankruptcy counsel threatening sanctions if he proceeds with the Family Court Action, notifying that "Mr. Whitmyer is now actively seeking resolution of this case even though the bankruptcy attorney has threatened sanctions and insists this matter progress no further," and suggesting a status conference may be more appropriate.

20.     On May 22, 2020, Ms. Bailey replied to Mr. Swiatek's email, stating that "Per Judge Polson, a party usually files a suggestion of bankruptcy or an Order Staying the Action from the bankruptcy court, and unless this is filed, we may proceed. [4]  Therefore, please let me know

---

[4]     The Court notes that this determination and advice was incorrect as a matter of federal law.

what motions, including a status conference, if necessary, and how much time is needed to be set before Judge Polson, so that I may provide the necessary dates." Later that day, in response to Ms. Bailey's email, Mr. Swiatek sent an email attaching a "Notice of Withdrawing the Previously Filed Notice of Withdrawing Motions" and suggesting that "2 hours and 15 minutes will be sufficient for all matters presently before the Court," which by inference included all relief requested in the Motion to Strike, Motion for Child Support Pendente Lite, and Motion to Institute Standing Pretrial Order.

21.      On June 18, 2020, recognizing the existence of the automatic stay, Defendant filed a motion for relief from the automatic stay in Debtor's bankruptcy case, seeking relief from stay to proceed *on all counts* of her Florida Complaint, which was set for an in person hearing on July 28, 2020.

22.      On July 7, 2020, Debtor filed an Emergency Verified Motion for Child Pick-Up Order ("Emergency Motion") in the Florida Domestic Court. The same day, Defendant filed a Response to the Emergency Motion.

23.      On July 8, 2020, the Florida Domestic Court entered an order setting an hearing on July 29, 2020 ("the State Court Hearing") regarding the following motions: (1) Debtor's Motion to Dismiss Petitioner's Petition to Domesticate Foreign Order; (2) Debtor's Motion to Dismiss Count Three for Failure to State a Cause of Action upon which Relief can be Granted; (3) Debtor's Motion to Dismiss for Lack of Subject Matter Jurisdiction; (4) Debtor's Emergency Verified Motion for Child Pick-Up Order; (5) Defendant's Response and Objection to Respondent's Emergency Motion for Child Pick-Up Order; (6) Defendant's Response to Respondent's Emergency Verified Motion for Child-Up Order; and (7) Defendant's Motion to Strike.

24.     On July 23, 2020, Defendant filed her response in opposition to Debtor's Motion to Dismiss for Lack of Subject Matter Jurisdiction in the Florida Domestic Court, which she later supplemented with additional authority on July 25, 2020.

25.     On July 28, 2020, the Court held a hearing on Defendant's Motion for Relief from Stay.  Later that day, Debtor filed an Objection to Claim of Defendant in the Bankruptcy Court.

26.     In the morning of July 29, 2020, the Bankruptcy Court entered an Order on the Defendant's Motion for Relief from Stay, which recognized in part the parties' desire and agreement, as expressed on the record during the hearing on July 28, 2020, that the State Court Hearing scheduled for July 29, 2020 could take place without implication of the automatic stay, and further allowed Defendant to "proceed in an appropriate state court to seek an order establishing child support and to determine custody and visitation."  The Bankruptcy Court held that the stay was to be modified to allow for the litigation of the ongoing matters relating to child support and child visitation in the Florida court but that "all other matters in [Defendant's] Complaint are stayed until a further hearing on the Motion and Debtor's objection." This Order was served on all parties by email and the parties were directed to present a copy of the Order to the Florida Domestic Court.

27.     On July 29, 2020, the Florida Domestic Court conducted the State Court Hearing on the pending motions, except the Motion to Strike, which does not appear to have been argued or addressed.

28.     On August 26, 2020, the Florida Domestic Court entered an Order granting Debtor's Emergency Verified Motion for Child Pick-Up Order, an Order granting in part and denying in part Debtor's Motion to Dismiss for Lack of Subject Matter Jurisdiction ("Dismissal Order"), an Order granting Debtor's Motion to Dismiss Count Three for Failure to State a Claim

upon which Relief can be Granted; and an Order denying Debtor's Motion to Dismiss Petitioner's Petition to Domesticate Foreign Order. The Dismissal Order included a finding that North Carolina law governed the interpretation and enforcement of the Separation Agreement. No order was issued by the Florida Domestic Court regarding the Defendant's Motion to Strike. The Florida Domestic Court retained jurisdiction over the causes of action for child support and parenting plan. As of the date of the trial of this adversary proceeding, no determination regarding prepetition or post-petition child support and the parenting plan has been made by the Florida Domestic Court.

29.    On September 4, 2020, the Bankruptcy Court entered an Order Setting a Definite Hearing on Debtor's Objection to Claim for September 10, 2020.[5] In that Order, the Court indicated that the Proof of Claim filed by Defendant lacked *prima facie* evidence of validity and amount due to its failure to meet certain requirements of Fed. R. Bankr. P. 3001 and therefore Defendant bore the initial burden of proof to establish the validity and amount of her claim based upon the Florida Complaint.

30.    On September 10, 2020, the Bankruptcy Court conducted a hearing on Debtor's Objection to Claim. During that hearing, both Debtor and Defendant presented testimony regarding Defendant's claim, including testimony regarding the military retirement and educational benefits provisions of the Settlement Agreement.

31.    On October 7, 2020, the Bankruptcy Court entered a Second Order on the Motion for Relief from Stay, which acknowledged that Defendant had proper notice of the automatic stay in this case and found that "to the extent the Florida Domestic Court suggested or permitted Movant to file certain causes of action in a different jurisdiction or court division [other than the Bankruptcy Court], that portion of the Florida Domestic Court's order is void as a violation of the

---

[5]    September 10, 2020 was also the date set for a possible hearing provided in the Notice of Objection to Claim filed on July 28, 2020.

automatic stay. The automatic stay remains in effect as to all of the dismissed causes of action in Movant's Complaint. Any action to prosecute or defend those dismissed causes of action will be in violation of the automatic stay unless otherwise ordered by the Court in a future order."

32.    On October 22, 2020, the Bankruptcy Court entered an Order on Debtor's Objection to Claim of Defendant ("Claim Order").  In the Claim Order, the Court *disallowed* Defendant's claim regarding prepetition matters as follows: (1) to the extent that she asserts an outstanding priority prepetition claim for child support (except to the extent that it is determined that Defendant has an unliquidated, prepetition claim for child support for after school care for the minor children due to Debtor's rank increase under the terms of the Settlement Agreement); (2) to the extent that Defendant asserts a cause of action for alimony and/or child support;[6] (3) to the extent that Defendant asserts a cause of action for an increased "coverture" share of Debtor's military retirement benefits under Florida law; (4) to the extent Defendant asserts a cause of action for rental proceeds received by Debtor for the Niceville, Florida property; (5) to the extent Defendant asserts a cause of action for conversion of personal property from the Niceville, Florida property; (6) to the extent Defendant asserts a cause of action for conversion of personal funds for unreimbursed expenses related to the Niceville, Florida property; and (7) to the extent Defendant asserts a cause of action for constructive fraud or breach of fiduciary duty based upon Debtor's refinancing of the Fayetteville, NC property.  The Court deferred ruling on Defendant's claim for increased prepetition child support for after-school care for the minor children based upon Debtor's rank increase as well as her assertion of claims based upon Debtor's obligation to transfer military educational and retirement benefits under the Settlement Agreement.

---

[6]    The Court found that alimony and spousal support were expressly waived by Defendant in the Settlement Agreement.

33.    On October 30, 2020, the Court entered a Supplemental Order regarding Debtor's Objection to Claim ("Supplemental Order") to clarify its ruling that Debtor had complied with all child support obligations under the Settlement Agreement, to expressly find that the Settlement Agreement did not impose any obligation on Debtor to make payments designated for the mortgage, house insurance and homeowner's association dues directly to Defendant when she moved from the Niceville, Florida property, and to disallow any claim by Defendant for additional prepetition child support based upon Debtor's payment obligation for the mortgage, house insurance and homeowner's association dues regarding the Niceville, Florida property.

### *Adversary Proceeding*

34.    On July 24, 2020, Debtor commenced this adversary proceeding in the Bankruptcy Court by filing a Complaint alleging the following causes of action:

a.    Declaratory judgment that Debtor is current on all monetary and support related obligations under the Settlement Agreement;

b.    Declaratory judgment that Defendant's right to Debtor's military retirement is limited to a 20% share of what Debtor would have received as determined by his rank of Captain;

c.    Declaratory judgment that Debtor has no further obligations regarding the Montgomery GI Bill educational benefits under the Settlement Agreement;

d.    Declaratory judgment that Defendant has no right to rental income from Niceville, Florida house under the Settlement Agreement;

e.    Declaratory judgment that Debtor did not breach any fiduciary duty to Defendant regarding the Fayetteville, NC house;

f.   Declaratory judgment that Debtor did not convert rental income from the Niceville, Florida house because Defendant had no right to such rental income;

g.   Declaratory judgment that Debtor did not convert personal property of Defendant;

h.   Declaratory judgment that Debtor did not convert Defendant's personal property by failing to reimburse her for repair expenses; and

i.   Eight separate causes of action for willful violation of the automatic stay based upon Defendant's post-petition filing of a motion to strike in the Florida Domestic Court lawsuit and her request for attorney's fees and costs for that motion from Debtor; Defendant's continuing efforts to litigate (with knowledge of the bankruptcy filing): the Second Cause of Action in Florida Domestic Court (regarding military retirement benefits), the Sixth Cause of Action in Florida State Court (regarding G.I. Bill educational benefits), the Seventh Cause of Action in Florida Domestic Court (regarding rental proceeds for Niceville, FL property), the Eighth Cause of Action in the Florida Domestic Court (regarding constructive fraud); the Ninth Cause of Action in the Florida Domestic Court (regarding conversion of rental proceeds), the Tenth Cause of Action in the Florida Domestic Court (regarding conversion of personal property), and the Eleventh Cause of Action in the Florida State Court (regarding unreimbursed repair expenses).

35.   Defendant filed her Answer to the Complaint on August 27, 2020.

36.   Defendant, upon obtaining representation by South Carolina bankruptcy counsel, later sought to amend her Answer to include a counterclaim against Debtor by motion filed on

September 30, 2020.  After a hearing, the Court entered an Order granting the motion and giving Defendant seven (7) days to file an Amended Answer and Counterclaim that strictly complied with the requirements of the Order. In that Order, the Court held that the matters determined in its Claim Order entered on October 22, 2020 and Supplemental Order entered on October 30, 2020, including the disallowance of the great majority of Defendant's claim and causes of action on which it was based, were previously determined and *res judicata* applies, thus binding Defendant to the Court's determination of her claim and resolving many of the issues and allegations raised in the Complaint in this adversary proceeding. The Court stated "the disallowance of the causes of action as related to the proof of claim eliminates the need for the Court to examine the nature of those alleged obligations or questions of dischargeability."

37.     Despite entry of the Order allowing Defendant to amend her Answer, Defendant did not file an Amended Answer and Counterclaim.

38.     The parties submitted a joint pretrial order on December 7, 2020, which set forth the facts which are admitted and require no proof and was signed by counsel for both parties.  In the joint pretrial order, the parties expressly agreed that "the reference to the Montgomery GI Bill [in the Settlement Agreement] was for the purpose of assigning to [Defendant] the educational benefits provided for spouses by the military." The parties further agreed that "[n]either [Debtor] nor [Defendant] are presently eligible to draw from retirement."

39.     Defendant and Debtor filed cross motions for summary judgment, which were denied by Order entered December 17, 2020.

40.     The Bankruptcy Court conducted a trial of this adversary proceeding on January 6, 2021, which was continued to January 14, 2021, to allow the presentation of additional testimony

from Mary Fran Quindlen, Esq. and Mr. Swiatek by video conference.  Ms. Quindlen was admitted

as an expert witness regarding military retirement and educational benefits without objection.

## CONCLUSIONS OF LAW

### I.    *Burden of Proof*

Debtor's Complaint includes claims seeking declaratory judgment relief and claims for

alleged willful violations of the automatic stay.  As the party seeking a declaratory judgment,

Debtor generally bears the burden of proof. *Willcox v. Stroup (In re Willcox),* 329 B.R. 554,

(Bankr. D.S.C. 2005) (citing 10B Charles Alan Wright & Arthur R. Miller, Federal Practice and

Procedure § 2770 (4th ed.)), *rev'd on other grounds, Willcox v. Stroup,* 358 B.R. 824 (D.S.C.

2006).  However, to the extent that Debtor's claims seek a declaratory judgment regarding

Defendant's entitlement to assert a claim in his bankruptcy case, Defendant continues to bear the

burden of proof of establishing the validity and amount of her claim, as indicated by the Court in

its Claim Order.[7]  Specifically, those matters include Defendant's entitlement to a claim for

military retirement benefits and military educational benefits based upon the Settlement

Agreement.

To recover damages for willful violation of the automatic stay, Debtor bears the burden of

demonstrating that (1) a bankruptcy petition was filed, (2) that Debtor is an "individual" protected

under the automatic stay provision, (3) that Defendant received notice of the petition, (4) that

Defendant's actions were in willful violation of the automatic stay, and (5) that Debtor suffered

damages. *Weatherford v. Timmark (In re Weatherford),* 413 B.R. 273, 284 (Bankr. D.S.C. 2009).

---

[7]      In the Claim Order, the Court held that Defendant bore the burden of proving her claim since her Proof of
Claim lacked *prima facie* evidence of validity and amount, having failed to meet all of the requirements of Fed. R.
Bankr. P. 3001.  The Court further found that even if Defendant's claim met the requirements for *prima facie* validity
under Rule 3001(f), Debtor had presented sufficient evidence to rebut the presumptive validity of her claim and thus
the burden shifted back to Defendant to prove the amount and validity of her claim.

## II.    *Matters Determined Prior to Trial*

In its previous order regarding Defendant's Motion to Amend, this Court held that Defendant was bound by *res judicata* to the determinations made in the Claim Order entered in the underlying bankruptcy case on October 22, 2020 and Supplemental Order entered on October 30, 2020, which included the disallowance of the great majority of Defendant's claim and causes of action upon which her claim was based.  In making these determinations, this Court applied North Carolina law where applicable, which coincides with the Florida Domestic Court's determination in its Dismissal Orders that it had no subject matter jurisdiction because the matters were governed by North Carolina law. As a result, many of the issues and allegations raised in the Complaint in this adversary proceeding are barred since the disallowance of the causes of action as related to the proof of claim eliminates the need for the Court to determine the nature of those alleged obligations or questions of dischargeability by declaratory judgment.  *Vieira v. Harris (In r JK Harris & Company, LLC)*, 512 B.R. 552, 557 (Bankr. D.S.C. 2012) ("Under the traditional rubric of *res judicata*, once a matter—whether a claim, an issue, or a fact—has been determined by a court as the basis for a judgment, a party against whom the claim, issue, or fact was resolved cannot relitigate the matter.") (quoting *In re Microsoft Corporation Anti–Trust Litigation*, 355 F.3d 322, 325 (4th Cir.2004)). Accordingly, the following causes of action in the Complaint have been previously determined in Debtor's favor and are binding on the parties:

> (1) the fourth cause of action seeking declaratory judgment that Defendant has no right to any rental income from the Niceville, FL house under the Settlement Agreement;

(2) the fifth cause of action seeking declaratory judgment that Debtor did not breach any fiduciary duty to Defendant in connection with the refinancing of the Fayetteville, NC house;

(3) the sixth cause of action seeking declaratory judgment that Defendant has no rights to the rental income on the Niceville, FL house;

(4) the seventh cause of action seeking declaratory judgment that Debtor did not convert personal property (furniture and other personal items) belonging to Defendant; and

(5) the eighth cause of action seeking declaratory judgment that Debtor did not convert Defendant's personal property by failing to reimburse her for repair expenses for the Niceville, FL house.

With regard to the first cause of action seeking a declaratory judgment that Debtor is current on all monetary and support related obligations under the Settlement Agreement, the Court found in the Claim Order that Debtor had paid prepetition child support in full, but deferred determination of any claim for increased prepetition child support due in the form of after-school childcare for minor children upon Debtor's promotion to Major, pending the ruling, if any, of the Florida Domestic Court. As it does not appear that the Florida Domestic Court has made any ruling on this matter as of the date of trial, this matter remains outstanding pending resolution in the Florida Domestic Court.

### III.   *Military Retirement Benefits*

Debtor's second cause of action in his Complaint seeks a declaratory judgment that Defendant's right to Debtor's military retirement under the Settlement Agreement is limited to a 20% share of what Debtor would have received as determined by his rank of Captain at the time

of the divorce, that he does not owe Defendant any debt with regard to military retirement, and, in the alternative, that any such debt to Defendant regarding the military retirement be classified as a dischargeable, unsecured, nonpriority debt.  In the Claim Order, the Court previously disallowed Defendant's request for an increased "coverture" share of Debtor's military retirement under Florida law,[8] therefore any request for an *increased* share of the retirement in this action is barred by *res judicata*.[9]  *See Vieira v. Harris*, 512 B.R. at 557.  The Court also found in the Claim Order that there was no basis to rescind the Settlement Agreement for fraud.  Therefore, Defendant is bound to the terms of the Settlement Agreement. *See* N.C. Gen. Stat. § 52-10.1 ("Any married couple is hereby authorized to execute a separation agreement not inconsistent with public policy which shall be legal, valid, and binding in all respects; provided, that the separation agreement must be in writing and acknowledged by both parties before a certifying officer ….")

The Claim Order left open the issue of Defendant's interest in the retirement benefits provided for by the Settlement Agreement.  During the trial, Defendant's counsel stipulated that any claim would be a nonpriority, unsecured, and dischargeable claim.  The Settlement Agreement provides the following regarding military retirement:

> Part III, Section 7, RETIREMENT, PENSION AND 401(k) ACCOUNTS
>
> Both parties understand and agree that each may have accumulated during the course of the marriage certain retirement, pension, 401(k) or similar accounts. The parties understand and agree that each party shall be the sole and separate owner of all such accounts in that party's name. Each party agrees to sign documents or other instruments which might be necessary to release their interest in those said accounts in the other's name.  However, it is understood and agreed that the Wife will receive twenty percent (20%) of the amount of retirement received by the Husband from the Army as determined from his

---

[8]    The disallowance of Defendant's claim for an increased "coverture" share under Florida law was primarily based upon the Court's conclusion that North Carolina law, not Florida law, governed the Settlement Agreement.

[9]    It further appears that Defendant's request for an increased share of the retirement would be procedurally barred under North Carolina law based upon her failure to specifically apply for equitable distribution of this asset prior to the judgment of absolute divorce. *See* N.C. Gen. Stat. Ann. § 50-11(b) ("An absolute divorce obtained within this State shall destroy the right of a spouse to equitable distribution under G.S. 50-20 unless the right is asserted prior to judgment of absolute divorce.")

rank of Captain.  Wife will not be entitled to this retirement if she is married
at the time she becomes eligible to draw from this retirement.

Debtor is active duty military and is not presently entitled to draw from his retirement. Defendant

testified that she believed Debtor would be eligible to retire after he completes twenty years of

service in 2025.   Additionally, Defendant is currently married and therefore, under the terms of

the Separation Agreement, she is presently ineligible to draw from Debtor's retirement.   As

indicated in the Claim Order, Defendant continues to bear the burden of establishing the amount

and validity of any claim based upon Debtor's military retirement.   Defendant testified that using

a military retirement pay calculator, she determined that her 20% share of Debtor's military

retirement equals approximately $155,000 (based upon a monthly payment of $350 per month

received for thirty-eight years).  Defendant's valuation of her share appears to be speculative,[10] as

there are several conditions that must occur for Defendant to be eligible to collect this retirement

pay, including but not limited to: (1) Debtor must be entitled to draw from his retirement (not

disability retirement) for which he does not appear to be eligible until at least 2025; (2) Defendant

must not be married at the time Debtor retires; (3) Debtor must continue to fulfill his obligations

to the military until that time; and (4) Debtor must be alive for Defendant to collect.[11] Defendant

has no right to payment until these conditions are met. Due to these conditions precedent and based

[10]      The Court further notes that the amount of military retirement Defendant may be entitled to receive could
further be reduced by other contingencies such as Debtor electing to waive a portion of those benefits to obtain
disability benefits.  *See Howell v. Howell,* 137 S.Ct. 1400 (2017).  In *Howell,* the Supreme Court observed that the
Uniformed Services Former Spouses' Protection Act, 10 U.S.C. § 1408, allows states to treat veterans' disposable
retired pay as divisible property, i.e., community property divisible upon divorce, but the Act expressly excludes from
its definition of "disposable retired pay" those amounts deducted from that pay as a result of a waiver required by law
in order to receive disability benefits). The Supreme Court stated that while a divorce decree might be said to vest the
wife with an immediate right to half of the husband's military retirement pay, that interest is, at most, contingent,
depending for its amount on a subsequent condition: the husband's possible waiver of that pay.
[11]      10 U.S.C. § 1408(d)(4) (providing that payments from disposable retired pay of a member pursuant to this
section terminate upon the death of the member or the date of the death of the former spouse, whichever occurs first).
There is no evidence that the parties agreed to or Debtor elected to transfer any survivor benefits to Defendant.

on the evidence presented, the Court is unable to determine a claim by Defendant exists, including the amount or classification of any such claim or interest, in Debtor's military retirement.  For these reasons, Defendant's claim is disallowed.  If the conditions are met during the course of Debtor's bankruptcy case, the parties may petition the Court for further consideration. Therefore, at this time, Debtor's plan need not treat a claim by Defendant for military retirement.

## IV.    *Military Educational Benefits*

Debtor's Complaint seeks a determination that Debtor does not owe Defendant any debt related to the transference of military educational benefits to Defendant in accordance with the Settlement Agreement, and if any such debt exists, that the debt be classified as a dischargeable, unsecured, nonpriority debt.  Defendant's proof of claim appears to assert a cause of action based upon Debtor's breach of a contractual obligation to transfer military educational benefits in the Settlement Agreement.   At the hearing, Defendant's counsel stipulated that any claim arising herein would be a nonpriority, unsecured, and dischargeable claim.

### a.  *Educational Benefits Provided by Settlement Agreement*

Part III, Section Twelve of the Settlement Agreement, entitled "MISCELLANEOUS PROVISIONS," provides:

> It is understood and agreed that the Husband shall sign whatever documents, *or take all steps that might be necessary*, in order to allow the Wife to continue to receive benefits under the Montgomery GI Bill for so long as she might be eligible.

> (emphasis added)

In the Joint Pretrial Order, the parties agreed and admitted that the reference to the "Montgomery GI Bill" was for the purpose of assigning to Defendant the educational benefits provided at that time for spouses by the military. Defendant presented the testimony of Mary Fran Quindlen, Esq., who was admitted as an expert witness regarding military educational benefits.  According to Ms.

Quindlen, the educational benefits provided for spouses by the military during the relevant time period would include Montgomery GI Bill benefits under 38 U.S.C. § 3011 or Post 9/11 GI Bill benefits provided in 38 U.S.C. § 3301 *et seq.*, and both types of benefits would have been available to Debtor based on his time of service and would have provided 36 months of benefits.  She further testified that Montgomery GI Bill benefits must be elected during the first year of enlistment during boot camp and election of these benefits requires payment of $100 per month for twelve months, which is deducted from the servicemember's pay. Ms. Quindlen also testified that Montgomery GI Bill benefits are not assignable. According to Ms. Quindlen, no payment is required for a servicemember to receive Post 9/11 benefits and those benefits are transferable to spouses and children.  Debtor's testimony was inconsistent regarding which educational benefits he intended to transfer to Defendant in the Settlement Agreement.   At the hearing on his Objection to Defendant's Proof of Claim in his bankruptcy case, Debtor testified that he "was never entitled to the Montgomery G.I. Bill benefits" and had "turned down" those benefits due to their cost but that he was entitled to other educational benefits provided by the military.  However, at the trial of this adversary proceeding, Debtor testified that he did elect and pay for Montgomery GI Bill benefits. Based on the evidence presented and after weighing the credibility of the witnesses, the Court finds that the parties intended to the Settlement Agreement to provide for the transfer of any military educational benefits to Defendant for which she was eligible, including the Post 9/11 GI Bill benefits.

> b.  *Post 9/11 GI Bill benefits*

Under 38 U.S.C. § 3312, an individual entitled to educational assistance under the Post 9/11 GI Bill is entitled to a number of months of educational assistance not exceeding 36 months. 38 U.S.C. § 3312(a).  A servicemember may transfer unused education benefits to a spouse and/or

one or more of the servicemember's children under 38 U.S.C. § 3319.   The total months of

entitlement to educational assistance transferred may not exceed 36 months.  38 U.S.C. § 3319(d).

In order to transfer the educational benefits, the servicemember must "(1) designate the dependent

or dependents to whom such entitlement is being transferred; (2) designate the number of months

of such entitlement to be transferred to each such dependent; and (3) specify the period for which

the transfer shall be effective for each dependent designated under paragraph (1)." 38 U.S.C.

§ 3319(e).  Ms. Quindlen testified that the transfer of benefits is done by completing a simple form,

called Transfer of Entitlement (TOE), which must be done by the servicemember.  She further

testified that the non-military member does not have the ability to obtain the assignment of the

educational benefits without the completion of the TOE by the servicemember.  According to Ms.

Quindlen, once assigned, the spouse would be entitled to use those benefits for up to fifteen years

after the TOE. *See also* 38 U.S.C. § 3321(a) (providing that "[e]xcept as provided in this section,

the period during which an individual entitled to educational assistance under this chapter may use

such individual's entitlement expires at the end of the 15-year period beginning on the date of such

individual's last discharge or release from active duty.") After the finalization of a divorce between

the servicemember and the spouse, the servicemember can no longer assign educational benefits

to the former spouse.[12]   38 U.S.C. § 3319(f)(3).  Debtor testified that he later transferred the

educational benefits to his children. The evidence indicates that Defendant was eligible to receive

all 36 months of benefits by transfer from Debtor at the time of the execution of the Settlement

Agreement.

---

[12]     In the Claim Order, this Court stated that "it appears a servicemember and divorcing spouse could voluntarily agree to the continuance of the transferred benefits under the Post 9/11 Bill after a divorce." To clarify, the servicemember and divorcing spouse can only agree to the *continuation* of transferred benefits that were transferred *prior* to the divorce and cannot agree post divorce to transfer benefits under 38 U.S.C. § 3319(f)(3).

### c. Defendant's Claim for Educational Benefits

Under the plain language of the Settlement Agreement, Debtor was required to execute all documents required to transfer the educational benefits to Defendant. Debtor testified that he did not execute a TOE or any other document to assign the educational benefits to Defendant, based upon a belief that it was unnecessary. Defendant testified that she planned to attend nursing school at either University of Illinois or George Mason University, which would have cost between $27,400 - $29,200 in tuition for a 36-month program. When she inquired with the Department of Veterans Affairs about obtaining the educational benefits as Debtor's former spouse, she was told that she was ineligible due to the divorce. She is seeking a claim for $29,000 for loss of those educational benefits. Debtor did not dispute the Defendant's calculation of the costs of attending nursing school at those universities.

Based on the evidence presented, the Court finds that Defendant has met her burden of demonstrating a claim based upon breach of the educational benefits provision of the Settlement Agreement. The evidence further supports a valuation of that claim at $28,000.

### d. Classification of Defendant's Claim for Educational Benefits

While Defendant generally classified all of her claims based upon the Florida Court Complaint as "domestic support obligations" in her proof of claim, at trial, counsel for Defendant stated that he believed that both the claims for military retirement benefits and educational benefits were in the nature of nonpriority, unsecured claims which would be dischargeable if the Debtor completed his Chapter 13 bankruptcy case.[13] Under the circumstances of this case, the Court finds

---

[13]    Claims based upon "domestic support obligations" are entitled to priority treatment and must be paid in full in a debtor's chapter 13 plan under 11 U.S.C. § 507(a). Section 101(14A) of the Bankruptcy Code defines a domestic support obligation as a debt "owed to or recoverable by . . . [a] former spouse;" "in the nature of alimony, maintenance, or support…;" and established prior to the filing of the bankruptcy case by "a separation agreement, divorce decree, or property settlement agreement." 11 U.S.C. § 101(14A). However, not all debts incurred by a debtor in connection with a divorce or separation are entitled to priority treatment. *See* 11 U.S.C. §§ 523(a)(15) and 1328(a)(2). "In a

that the educational benefits were not intended as alimony, maintenance or support. Accordingly, Defendant's claim based upon the educational benefits is not entitled to priority treatment under § 507(a)(1)(A) and is dischargeable under § 1328(a)(2).

### V.    *Willful Violation of the Automatic Stay*

Debtor asserts that Defendant willfully violated the automatic stay by pursuing the Family Court Action after Debtor filed his bankruptcy case through the filing of the Motion to Strike, which reopened the Family Court Action and allowed the continued prosecution of Defendant's Complaint, which included property and other claims beyond child support and custody.

"The Bankruptcy Code provides a statutory injunction under [11 U.S.C.] § 362, known as the automatic stay, which freezes the collection of debts and other actions in most judicial proceedings, including state court proceedings, in order to provide a debtor with a breathing spell." *In re Parast,* 612 B.R. 710 (Bankr. D.S.C. 2020). "[T]he automatic stay is a self-executing provision of the Bankruptcy Code and begins to operate nationwide, without notice, once the debtor files [his] petition for relief." *In re A.H. Robins Co., Inc.,* 63 B.R. 986, 988 (Bankr. E.D. Va. 1986), aff'd 839 F.2d 198 (4th Cir. 1988). The Notice provided to Defendant and the Florida Domestic Court appears correctly addressed and therefore provided notice of the bankruptcy case. The Notice states in part that "[t]he filing of the case imposed an automatic stay against most collection activities. This means that creditors generally may not take action to collect debts from the debtors, the debtors' property, and certain codebtors. For example, while the stay is in effect, creditors cannot sue, garnish wages, assert a deficiency, repossess property, or otherwise try to collect from the debtors."

---

Chapter 13 case, obligations such as a marital property settlement are not entitled to full priority and are dischargeable." *In re Priester*, Case No. 11-2130-jw, slip op. at 6 (Bankr. D.S.C. Jul. 22, 2011).

Willful violations of the automatic stay may have significant consequences under § 362(k)(1), which provides that "an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." The Fourth Circuit has defined a willful violation of the automatic stay as occurring when a creditor knows of the pending bankruptcy petition and intentionally attempts to continue collection procedures in spite of it. *See Budget Serv. Co. v. Better Homes of Virginia, Inc*., 804, F.2d 289, 293 (4th Cir. 1986). To obtain a recovery under § 362(k), "a plaintiff must show (1) that the defendant violated the stay imposed by § 362(a), (2) that the violation was willful, and (3) that the plaintiff was injured by the violation." *Houck v. Substitute Trustee Services, Inc.*, 791 F.3d 473, 484 (4th Cir. 2015). The determination of whether an act is a willful violation is an objective analysis as the Court does not consider the subjective intent of the creditor. *Warren v. Dill (In re Warren),* 532 B.R. 665, 663 (Bankr. D.S.C. 2015).

While the scope of the automatic stay is broad, § 362(b) does provide for some statutory exceptions to the application of the automatic stay, including:

> (2) ...
> (A) of the commencement or continuation of a civil action or proceeding—
> ...
> (ii) for the establishment or modification of an order for domestic support obligations;
> (iii) concerning child custody or visitation; [or]
> (iv) for the dissolution of a marriage, except to the extent that such proceeding seeks to determine the division of property that is property of the estate;
> (B) of the collection of a domestic support obligation from property that is not property of the estate;
> (C) with respect to the withholding of income that is property of the estate or property of the debtor for payment of a domestic support obligation under a judicial or administrative order or a statute ....

The evidence before the Court demonstrates Defendant and the Florida Domestic Court received notice of the bankruptcy filed on April 14, 2020 by notice sent to correct addresses by the Bankruptcy Noticing Center.[14]  Defendant disputes receiving this initial notice, but the notice was mailed to the same address later listed by Defendant in her proof of claim.  Additional notice of the pending bankruptcy case was provided as indicated by the Florida Domestic Court's docketing on April 20, 2020 of the Notice of Opportunity to Object and Confirmation Hearing it received from the Bankruptcy Court.  "Knowledge of the bankruptcy is the legal equivalent of knowledge of the stay." *In re Weatherford*, 413 B.R. at 284 (quoting *Galmore v. Dykstra (In re Galmore)*, 390 B.R. 901 (Bankr. N.D. Ind. 2008)).  Despite having notice of the pending bankruptcy case, Defendant filed a Motion to Strike the Notice of Opportunity to Object and Confirmation Hearing, which had the effect of reopening the Family Court Action that had been previously closed. In the Motion to Strike, Defendant requests that the Florida Domestic Court (1) reopen the Family Court Action; (2) strike the Notice of Opportunity to Object and Confirmation from the docket of the Family Court Action as "immaterial and impertinent;" (3) "order that attorney fees and costs be awarded to [Defendant] and payable by [Debtor];" and (4) that "the fee for reopening the file be taxed against [Debtor]." The Court finds that this filing violates the automatic stay because it seeks to reopen the Family Court Action, in which Defendant sought affirmative relief from Debtor that was barred by the automatic stay, such as marital property division and damages for unjust enrichment, constructive fraud and conversion, and also seeks to collect attorney fees and costs from Debtor.  The Court further finds that the violation of the automatic stay was willful because

---

[14]      Pursuant to Fed. R. Bankr. P. 9006(e), "notice by mail is complete on mailing."  Courts have generally held that mailing creates a presumption of receipt.  *See In re Greyhound Lines, Inc. v. Rogers (In re Eagle Bus Mfg., Inc.)*, 62 F.3d 730, 735 (5th Cir. 1995)  (stating the "rule implies that correctly mailed notice creates a presumption of proper notice"); *Moody v. Bucknum (In re Bucknum)*, 951 F.2d 204, 207 (9th Cir. 1991) (indicating "mail that is properly addressed, stamped, and deposited into the mails is presumed to be received by the addressee")).  Typically, a mere denial of receipt by the creditor does not rebut the presumption of proper notice.  *Moody,* 951 F.2d at 207 (*citing In re American Properties*, 30 B.R. 247, 250 (Bankr. D. Kan. (1983)).

Defendant filed the Motion to Strike with knowledge of Debtor's pending bankruptcy case. Defendant was mistaken in her belief that the pending bankruptcy case did not affect the Florida Court Action and that Debtor was required had to file a "Suggestion of Bankruptcy" to stop the Family Court Action. *See Warren,* 532 B.R. at 663 ("[A] creditor's belief that the automatic stay does not apply to his conduct is immaterial to the question of whether a stay violation has occurred, even if such belief is based on advice of counsel.").

### A. Damages – Attorney's Fees and Costs

"An award of damages under section 362(k) must be founded on 'concrete, non-speculative evidence' and cannot be based merely on 'speculation, guess or conjecture.'" *In re Banks,* 612 B.R. 167, 173 (Bankr. D.S.C. 2020) (quoting *In re Bolin*, C/A No. 12-02442-DD, 2012 WL 4062807, slip op. at *2 (Bankr. D.S.C. Sept. 13, 2012)); *see also In re Seaton*, 462 B.R. 582, 592 (Bankr. E.D. Va. 2011). In response to Defendant's Motion to Strike, Debtor asserts that he engaged bankruptcy counsel to prepare and send a letter to Defendant's counsel demanding that Defendant withdraw the Motion to Strike and threatening sanctions. Debtor also asserts that in light of Defendant's pending claims in the Florida Court Action, he was required to engage Florida counsel to file a Motion to Dismiss in the Florida Court Action seeking dismissal of Defendant's Complaint for lack of subject matter jurisdiction and other related motions. Initially, after receiving the letter from Debtor's bankruptcy counsel, Defendant's counsel withdrew the Motion to Strike, as well as other pending motions for child support and for a standing pretrial order but subsequently restored the Motion for prosecution. In addition, Defendant never withdrew or amended the Complaint to eliminate property or other claims asserted therein. Debtor testified that he incurred $8,766 in total attorney's fees and costs for his Florida state court counsel for defending him in the Family Court Action, but he presented no invoice, representation agreement, affidavit of Florida

counsel, or other evidence showing a breakdown of those fees.  The Court finds that the attorney's

fees for the preparing the letter to Defendant's counsel and the fees for preparing, filing, and

preparing for the hearing on the Motions to Dismiss appear to be costs resulting from Defendant's

filing of the Motion to Strike and continued prosecution of the Complaint.   However, the Court

finds that an award of additional fees for prosecuting the motions at the hearing is not warranted

in light of both parties' agreement, as expressed to the Court on July 28, 2020 and reflected in the

Order Granting Relief from Stay, that the July 29, 2020 hearings on the Motions to Dismiss could

proceed in the Florida Domestic Court without implication of the automatic stay.  The Court will

allow Debtor the opportunity to present affidavits setting forth the attorney's fees and costs he was

charged for the preparation and delivery of the letter by his bankruptcy counsel and for the

preparation, filing, and service of the Motions to Dismiss and preparation until July 28, 2020 for

the hearing on those Motions in the Family Court Action by his Florida state court counsel. In

making this determination, the Court further notes that the Florida Domestic Court's ruling

dismissing Defendant's request to modify the Separation Agreement as a matter of North Carolina

law was favorable to Debtor and coincides with this Court's ruling.  Nevertheless, Defendant's

Florida Counsel should have known or educated himself regarding the effects of the automatic

stay or should have demonstrated reasonable efforts to understand its effects on the domestic

proceeding.

### B.  Damages – Lost Paid Time Off and Travel Expenses

Debtor asserts that he had take 12 days of paid time off and incurred travel expenses

(transportation, lodging, and food) of approximately $3,000 to attend hearings as a result of the

stay violation. He asserts that the value of the lost paid time off is $2900.  He asserts that he was

required to take off three days in July, 2020, to attend a hearing in Okaloosa County on July 29,

2020, three days in September, 2020, to attend a hearing in the Bankruptcy Court in Columbia, SC, three days in December, 2020 for a scheduled hearing in the Bankruptcy Court which was continued, and three days in January, 2020 to attend the trial of the adversary proceeding in the Bankruptcy Court. The Court is not persuaded that damages in the form of lost paid time off and travel expenses is appropriate in this case.  First, the Florida Domestic Court record reflects that the July 29, 2020 hearing in the Family Court Action was conducted by videoconference utilizing ZOOM.[15]  Debtor did not provide testimony demonstrating a need to travel to Florida or take three days off to attend a hearing by videoconference. Moreover, as discussed above, on July 28, 2020, Debtor agreed that the July 29, 2020 hearing in Florida Domestic Court could take place without implication of the automatic stay. Second, the hearings in September in the Bankruptcy Court included scheduled hearings on confirmation of Debtor's plan, the Objection to Claim filed by Debtor, and Defendant's Motion for Relief from Stay.  Debtor's presence at the September hearings appears to have been necessary to the administration of his bankruptcy case, regardless of any alleged stay violations.  By filing his bankruptcy petition in Columbia, South Carolina, he voluntarily elected to attend hearings related to his case, including any adversary proceedings he filed in that case, in this venue and to incur necessary travel expenses to do so.  In addition, the hearing in the Bankruptcy Court in December was also conducted by video.  Debtor did not present evidence to support the valuation of his travel expenses, such as flight, lodging, restaurant, or fuel receipts, or the valuation of his paid time off, such as his pay stubs.  Based on the evidence, the Court finds that Debtor has failed to meet his burden of proof to demonstrate damages that were

---

[15]     The fact that the hearing was conducted by videoconference is reflected in both the Florida Domestic Court's Order Setting Hearing Via ZOOM/Telephone for July 29, 2020 at 2:30 PM Central Time, dated July 8, 2020 as well as its Order on Respondent's Motion to Dismiss, dated August 26, 2020, which states "THIS MATTER came before the Court on July 29, 2020 by Zoom Video due to COVID-19 restrictions on in-person hearings."

the direct and proximate result of the stay violation in the form of lost paid time off and travel expenses.

### C.  Damages - Emotional Distress and Punitive Damages

Debtor asserts that he is entitled to damages for the emotional distress he experienced due to Defendant's willful violation of the automatic stay.  In support of this claim, he testified that he needed monthly visits with the military chaplain to help him deal with his stress.  He was not charged for those visits with the military chaplain.  He did not present any testimony or other evidence indicating that he experienced any physical ailments that required medical treatment or medication resulting from his stress. *See Warren v. Dill (In re Warren),* 532 B.R. 655 (Bankr. D.S.C. 2015) (awarding emotional distress damages where debtor experienced physical ailments due to missed doctor's appointments as a result of stay violation); *Weatherford,* 413 B.R. at 289 (awarding emotional distress damages where debtor presented testimony that she suffered from anxiety and depression as a result of stay violation, which required medication and counseling). Debtor's testimony does not convince the Court that he experienced emotional distress proximately caused by the stay violation itself, as opposed to the general stress experienced by a person going through a difficult domestic dispute involving his children.  Under the circumstances of this case, the Court finds that Debtor has failed to meet his burden of proving that an award of emotional distress damages is appropriate in this case.

Debtor has also made a claim for punitive damages but did not present any testimony or argument in support of such claim.  Section 362(k) allows punitive damages to be awarded in appropriate circumstances.  "An award of punitive damages is within the discretion of the Bankruptcy Court and is a fact specific determination." *In re Waters,* C/A No. 19-05230, Adv. Pro. No. 19-80090, 2020 WL 1884191, at *4 (Bankr. D.S.C. Feb. 13, 2020) (quoting *Romero v.*

*Coventry Credit Union (In re Romero)*, Adv. Pro. No. 10-80051-HB, 2010 WL 4863781 (Bankr. D.S.C. Nov. 23, 2010). Under the circumstances of this case, the Court does not find Defendant's actions in violation of the stay to be sufficiently egregious to justify an award of punitive damages in this case.

## CONCLUSION

Based on the foregoing, it is hereby ordered that the following causes of action in the Complaint are sustained having been previously determined in Debtor's favor:

(1) the fourth cause of action seeking declaratory judgment that Defendant has no right to any rental income from the Niceville, FL house under the Settlement Agreement;

(2) the fifth cause of action seeking declaratory judgment that Debtor did not breach any fiduciary duty to Defendant in connection with the refinancing of the Fayetteville, NC house;

(3) the sixth cause of action seeking declaratory judgment that Defendant has no rights to the rental income on the Niceville, FL house;

(4) the seventh cause of action seeking declaratory judgment that Debtor did not convert personal property (furniture and other personal items) belonging to Defendant; and

(5) the eighth cause of action seeking declaratory judgment that Debtor did not convert Defendant's personal property by failing to reimburse her for repair expenses for the Niceville, FL house.

With regard to the first cause of action seeking a declaratory judgment that Debtor is current on all monetary and support related obligations under the Settlement Agreement, the Court has agreed

that Debtor is current, pending the determination of a claim for prepetition child support in the form of after-school childcare for minor children by the Florida Domestic Court.

It is further ordered that Defendant is unable to establish the existence of a present and valid claim in Debtor's military retirement at this time. If the conditions necessary to establish a claim are met during the course of Debtor's bankruptcy case, the parties may petition the Court for further consideration. It is further ordered that Defendant has met her burden of demonstrating a claim in the amount of $28,000 based upon breach of the educational benefits provision of the Settlement Agreement. Defendant's claim is not entitled to priority treatment under 11 U.S.C. § 507(a)(1)(A) and is dischargeable under 11 U.S.C. § 1328(a)(2) subject to Debtor's completion of the plan. Finally, the Court finds that Defendant willfully violated the automatic stay and is liable for damages for the attorney's fees Debtor incurred in connection with the preparation of the letter to Defendant from Debtor's bankruptcy counsel and the preparation, filing, and service of the Motions to Dismiss and preparation until July 28, 2020 for the hearing on those Motions in the Family Court Action in an amount to be determined by the Court. Debtor may submit further affidavits of counsel within 10 days of the entry of this order to establish the amount of attorney's fees and costs incurred for those discrete matters, which the Court will determine by further order. No other damages for violation of the stay are appropriate or proven.

**AND IT IS SO ORDERED.**

**FILED BY THE COURT**
**02/17/2021**



John E Waites
US Bankruptcy Judge
District of South Carolina

Entered: 02/17/2021